```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3  Before The Honorable Elizabeth D. Laporte, Magistrate Judge
 4
 5  JAIME BARCENAS,              )
                                 )
 6           Plaintiff,          )
                                 )
 7  vs.                          )   No. C 14-02504-EDL
                                 )
 8  UNITED AIRLINES, INC.,       )
                                 )
 9           Defendant.          )
                                 )
10  _____)
11                                   San Francisco, California
                                     Tuesday, December 16, 2014
12
13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 10:01 - 10:15 = 14 MINUTES
14
15  APPEARANCES:
16  For the Plaintiff:
                              Smith Patten
17                            353 Sacramento Street
                              Suite 1120
18                            San Francisco, California
                                94111
19                            (415) 402-0084
                         BY:  DOW W. PATTEN, ESQ.
20
21
22
23
24        (APPEARANCES CONTINUED ON FOLLOWING PAGE)
25
```

```
                                                              2
 1  APPEARANCES:  (Cont'd.)
 2  For the Defendant:
                              Miller Law Group PC
 3                            111 Sutter Street
                              Suite 700
 4                            San Francisco, California
                                94104
 5                            (415) 464-4300
                         BY:  TRACY THOMPSON, ESQ.
 6
 7  Transcribed by:           Echo Reporting, Inc.
                              Contracted Court Reporter/
 8                            Transcriber
                              echoreporting@yahoo.com
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

1 <u>Tuesday, December 16, 2014                          10:01 a.m.</u>
2                    P-R-O-C-E-E-D-I-N-G-S
3                          --oOo--
4          THE CLERK:  Calling civil case 14-2504, Jaime
5 Barcenas versus United Airlines, Inc.
6          THE COURT:  Counsel, please state your
7 appearances.
8          MR. PATTEN:  Good morning, your Honor.  Dow Patent
9 for the plaintiff Jaime Barcenas.
10          MS. THOMPSON:  Good morning, your Honor.  Tracy
11 Thompson representing United Airlines.
12          THE COURT:  Good morning.  Thank you for your
13 patience.
14      So I think it is unfortunate that there was no clear
15 order setting a deadline for amending the pleadings.  The
16 reason was, in all likelihood, that plaintiff said they
17 weren't going to.  Nonetheless, I think since I didn't issue
18 such an order, it probably should imply one, although it's
19 tempting, which means that the looser standard for amendment
20 would apply.
21      And really the only issue that might overcome that
22 would be futility and whether there was an undue delay, I
23 would like to know as well.
24      That's one of the issues.
25      And I think there was a change in the date of the

proposed job application or promotion. But you haven't had a chance to address on the defense side. I don't know what the difference, if any, it makes.

But it seems as if the whole futility argument is going to boil down to is it the two-year or the four-year statute of limitations which it's not really a relate back question because it's three years so -- this new claim.

So that we get to the question which is it, and it seems as if the law is that's a pretty factual question as to not just any promotion -- and I suppose the same thing applies to demotion, I don't know -- but it has to be a qualitative change beyond just more pay and more duties in order to be tantamount to a change in the contract or a new contract.

And I don't know that I have one way or another to see that, so those are -- at this stage. So -- but those are the issues I would like to address.

And I'd like to give you a chance to address what just got added.

MS. THOMPSON: Thank you, your Honor. It is true that the Court did not specifically enter a deadline in the scheduling order, but I honestly believe that's because you put the question directly to plaintiff's counsel as to whether any amendment was intended and the answer was no, and so there was no reason to put a deadline.

5

1          THE COURT: I think that's why, but since I
2 didn't, it's hard to say that it violates the court-ordered
3 deadline.
4          MS. THOMPSON: Well, the problem is then the
5 plaintiff is benefitting from a misrepresentation to the
6 Court of his intentions --
7          THE COURT: Well --
8          MS. THOMPSON: -- which I think that's prejudicial
9 to the defendant, frankly, because there was a specific
10 question and there was a clear and unequivocal answer.
11     And then after that there were further
12 mischaracterizations of the record and the opening papers
13 about what the Court said with regard to meeting and
14 conferring.
15          THE COURT: Well, and I agree with your
16 characterization of that.
17          MS. THOMPSON: I'm sorry?
18          THE COURT: I agree with you that that's what I
19 was talking about.
20          MS. THOMPSON: Okay. And then we have the further
21 problem that the motion is based on an allegation of events
22 that occurred in September of 2012.
23          THE COURT: Yes, now they've changed that to
24 September of 2011.
25          MS. THOMPSON: Well, that's the problem, your

6

1 Honor.  They're not -- it wasn't just a simple typographical
2 error.  I mean it was all over their papers and it was in
3 counsel's declaration.  And then only on reply are we told,
4 well, no, gee, I really meant September 2011.  So --
5          THE COURT:  And what does -- I mean did something
6 happen?  I mean he was your employee in September 2011.
7     I know this is a motion to dismiss the allegations, but
8 I'm wondering whether there's really any there.
9          MS. THOMPSON:  Well, what happened was the talent
10 selection process --
11          THE COURT:  Right.
12          MS. THOMPSON:  -- that arose out of the merger
13 between Continental and United Airlines.
14          THE COURT:  Right, right.
15          MS. THOMPSON:  And as a result of the talent
16 selection process, all supervisor, management and
17 administrative employees were required to go through the
18 talent selection process.  And in Mr. Barcenas's case, that
19 meant he had to reapply along with everybody else for his
20 position.
21          THE COURT:  Right.
22          MS. THOMPSON:  So that issue is clearly in the
23 original complaint.
24          THE COURT:  Right.
25          MS. THOMPSON:  So in the motion on the proposed

1 first amended complaint, he alleged that there was a
2 separate adverse action that occurred in September of 2012.
3     THE COURT: Right.
4     MS. THOMPSON: A completely different position,
5 different decision makers, different facts, different
6 circumstances.
7     THE COURT: Right.
8     MS. THOMPSON: So we responded to that. And then
9 we were told on reply that, no, we meant really another
10 application for a different position in September 2011.
11     THE COURT: Which would be the same month as the
12 original?
13     MS. THOMPSON: Correct. So apparently what
14 they're alleging is that he applied for not one but two
15 different supervisor positions.
16     And, again, we would argue that there is no relation
17 back because they're different decision makers, different
18 jobs, et cetera.
19     THE COURT: Yeah, but I don't know -- as I said,
20 I'm not sure relation back really makes a difference so much
21 as is it the two-year versus the four-year.
22     MS. THOMPSON: Correct.
23     THE COURT: Because relating back, it's still
24 three years.
25     MS. THOMPSON: Right. So the problem here is,

again, we feel that the Rule 16 should control here. Everything was within the control of the plaintiff. They made certain representations to the Court. Now they're backing off of that.

THE COURT: Right. Well, I am concerned about that.

And I would like to, when I get to you, to hear why you represented to the Court and what came up that changed your mind, because I think you've also -- you said that they already had that information; however, I don't know if that's the case now that it's changed from September 2012 to September 2011. And --

MS. THOMPSON: Yes. I was just going to get to that point --

THE COURT: Yes.

MS. THOMPSON: -- that there has been no diligence here. These facts have been known to plaintiff and presumably his lawyers. They are all facts totally within his control.

He knows what positions he applied for. He knows what positions he didn't get. And he also should have known when they occurred.

So if Rule 16 applies, there's obviously a good cause standard. And we don't believe there is any showing of good cause.

1    So it does boil down to what's the applicable rule here
2 and what should apply.
3    Obviously, if the Court concludes it's Rule 15 that
4 does require a somewhat different analysis. But we do not
5 believe that the plaintiff has behaved diligently.
6    We do believe it would be futile. I understand the
7 Court's concerns that whether it's the two- or the four-year
8 statute, that does implicate certain facts. But I don't
9 think we even have to get there because we believe Rule 16
10 applies and there is absolutely no showing of good cause.
11         THE COURT: All right.
12         MR. PATTEN: Your Honor, my apologies to the Court
13 for referring to it as 2012. It's obviously 2011 and
14 counsel's known that. And --
15         THE COURT: Well, no, I mean nobody knew that
16 until your reply brief.
17         MR. PATTEN: Well, United knows when it opened
18 positions and when it didn't open positions. And there were
19 no positions open in 2012.
20         THE COURT: I don't think they have to read your
21 mind when you make mistakes --
22         MR. PATTEN: I --
23         THE COURT: -- but in any case now --
24         MR. PATTEN: Understood, your Honor.
25         THE COURT: Okay. So you're saying he applied for

two different positions? Because the talent selection process I thought was to reapply for your own job.

MR. PATTEN: Your Honor, this is our point. When we pled it, we pled the talent selection process as to a number of supervisor positions, not just your own positions. And that was our original intent.

And our intent -- and I know that we don't want to talk about the Barcenas matter, but we -- or the Bonillas matter, but this arose during discovery in that matter because there were a number of positions that were open in this time period, and what we wanted to do was to provide that additional specificity.

THE COURT: Yes, but your own client -- I mean as they say you shouldn't have to wait until discovery in another matter. I mean if your own client applied for more than one job, he's the one who knows that the best of all.

MR. PATTEN: Yes, your Honor, but the talent selection process occurred during this time period and there were a number of different positions that were supervisor positions.

THE COURT: When did you get -- and to the extent you say it was discovery in a different matter, when did you get that discovery?

MR. PATTEN: Your Honor, that was what I was referring to at the case management conference, your Honor.

1 And just so your Honor is clear, when I responded to your
2 Honor -- your Honor's question was amend the pleadings or
3 add parties? And I was responding. I was trying to be very
4 forthright.
5    We don't want to add any parties and we don't want to
6 add any more claims. And that's when -- if you look back at
7 the transcript, I go and I say, "And we're not adding any
8 other claims. We just want to be specific on these facts."
9    And, your Honor, from page five, just so we're clear,
10 there was a position that he was removed from in talent
11 selection and then shortly thereafter there's this
12 unannounced hiring for other supervisors. And that's the
13 position that we're talking about here. And that's what
14 concerned us in Bonillas and the scope of discovery.
15    And that's the only reason why we're amending the
16 complaint, your Honor, is so that -- we understand that we
17 can get discovery about this other position. That's all,
18 your Honor.
19       THE COURT: When you said no, you're not going to
20 amend the pleadings, to me that means you're not going to
21 amend the pleadings. I don't understand what you're saying.
22       MR. PATTEN: Your Honor, when I responded -- I
23 responded to your Honor's question. I said that we don't
24 need to amend the pleadings because there's only one claim.
25 There's only one claim, and it's about talent selection.

1          THE COURT:  This is on page four and five?  Where
2 are you talking --
3          MR. PATTEN:  Yes, your Honor.  And when I --
4          THE COURT:  Okay.  All right.  I have it now.
5          MS. THOMPSON:  I believe it's page three.
6          MR. PATTEN:  We start on page three, your Honor.
7          MS. THOMPSON:  Page three at line --
8          THE COURT:  Right.  17.
9          MS. THOMPSON:  -- 17.
10          THE COURT:  Uh-huh.
11      I think there was no intent to amend the pleadings.
12 That's what was said.  But are you saying that you didn't
13 have the information?
14      You already did have the information about the process
15 from this other matter when you're giving the answer "No
16 intent to add parties," right?
17          MR. PATTEN:  Yes, your Honor.
18          THE COURT:  All right.  So how is that diligent,
19 is what she's raising.
20          MR. PATTEN:  Your Honor, we're trying to provide
21 more specificity with respect to what -- the allegations
22 concerning talent selection are so that we didn't run into
23 the discovery issues we ran into previously concerning
24 whether we can obtain discovery about this November -- or
25 September, October 2011 position.

13

1    It's our allegation that that's part of the talent
2 selection process.
3         THE COURT: Well, so you're saying the only
4 purpose of this amendment is to get more discovery about
5 what you think you're going to have anyway?  I'm very
6 confused at this point.
7         MR. PATTEN: Your Honor, it's to have the
8 specificity in the complaint so that the defendant is on
9 notice of what we're alleging.
10     We're alleging that when the talent selection process
11 occurred, that it wasn't just a motion from positions but it
12 was opening other positions and filling them in the same
13 time period.
14         THE COURT: All right.  And what's your --
15         MS. THOMPSON: Well, my first reaction to that is,
16 why was it not alleged in the original complaint.  We've had
17 no explanation for that.
18     They clearly had the information -- they had the
19 information all along, because it's information obviously
20 within the scope of plaintiff's knowledge because he was
21 there and he's applying for the jobs.
22     But they clearly had the information from the Bonillas
23 case as of April, a month before -- April of 2014, a month
24 before the complaint was filed.  So why was it not alleged?
25 I do think there's a serious lack of diligence here.

1     And the second issue is they're trying to introduce now
2  a second completely independent adverse action.
3         THE COURT:  So what is the prejudice, if any?
4         MS. THOMPSON:  The prejudice is that we need to
5  deal with what we believe is a futile claim that we
6  shouldn't have to deal with and that's basically our
7  argument on prejudice, is that -- but again, I'm not sure
8  prejudice is the standard here.
9      I think the standard is good cause.
10        THE COURT:  Well, all right, but if it was Rule
11 15, undue delay does weigh in there.  If it's Rule 16, I
12 agree it's a different standard.
13        MS. THOMPSON:  Well, there is still an undue delay
14 issue.  There's a futility issue.
15        THE COURT:  Right.
16        MS. THOMPSON:  And the prejudice is that we now
17 have a new adverse action that, again, was just brought up
18 now in the reply brief.  It's a completely different theory
19 than they were arguing in their motion originally.
20     So I -- some of the circumstances here suggest to me
21 that amendment is not proper.
22        THE COURT:  Well, it is -- I do find it -- I mean
23 there's some irregularities here certainly and it's
24 troubling that the date changed like that.  And it was
25 represented to the Court there wasn't going to be any

```
                                                              15
 1  amendment.
 2       So I am very concerned about that.
 3       Anyway, is there anything else anyone wants to bring
 4  up?
 5            MR. PATTEN:  That's it, your Honor.
 6            MS. THOMPSON:  No thank you, your Honor.
 7            THE COURT:  All right.  I'm going to take that
 8  under submission.  Thank you.
 9            MR. PATTEN:  Thank you, your Honor.
10            MS. THOMPSON:  Thank you very much, your Honor.
11       (Proceedings adjourned at 10:15 a.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

16

1              CERTIFICATE OF TRANSCRIBER

2

3     I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9     I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

14       *[signature]*

15

16          Echo Reporting, Inc., Transcriber

17            Wednesday, December 24, 2014

18

19

20

21

22

23

24

25